**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| Estvold Oilfield Services, Inc., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> The Hanover Insurance Company and ) <br> PayneWest Insurance, Inc., ) <br> ) <br> Defendants. ) | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND DENYING REQUEST FOR A HEARING** <br><br> Case No. 1:17-cv-016 |

Before the court is a "Motion to Dismiss for Failure to State a Claim" filed by the Hanover Insurance Company ("Hanover") on May 26, 2017. See Doc. Nos. 26 and 27. Also before the court is Estvold Oilfield Services, Inc.'s ("Estvold") motion for a hearing on Hanover's motion. For the reasons set forth below, Hanover's motion is granted in part and denied in part and Estvold's motion for a hearing is denied.

**I.    BACKGROUND**

The following facts are either undisputed or are otherwise accepted as true for the purposes of this motion. McAuley v. Federal Ins. Co., 500 F.3d 784, 787 (8th Cir. 2007).

Estvold purchased a Hanover-underwritten insurance policy through PayneWest in January 2016 for properties it owned in or near three North Dakota towns: New Town, Alexander, and Richardton. One of Estvold's properties, a Steel Shop located at 8449 39th St. NW, New Town, North Dakota (hereinafter referred to as the "39th St. Steel Shop") was destroyed in a conflagration on April 23, 2016. Estvold promptly tendered a fire loss claim to Hanover. Hanover denied the claim on the ground that the 39th St. Steel Shop was not amongst properties covered by Estvold's insurance policy.

1

Estvold initiated the above-entitled action on January 18, 2017. It has asserted claims against Hanover for breach of contract, declaratory judgment, reformation of contract and specific performance, and violation of the State's Unfair Insurance Practices Act. It has asserted the same claims along with additional claims for professional negligence and negligence against PayneWest. It seeks a declaration that its insurance policy covers the fire damage to the 39th St. Steel Shop. In the alternative, it seeks either reformation of the policy to reflect that the 39th St. Steel Shop was covered and payment from Hanover for the fire loss claim, or a finding that PayneWest was negligent for failing to correctly identify the 39th St. Steel Shop in the insurance proposal.

The insurance proposal prepared by PayneWest (and presumably accepted as is by Estvold) listed the following schedule of properties to be covered by the policy:

<u>Loc. No. 1- 3962 84th Ave. NW, New Town, ND 58763</u>:
Building #1                Office/Shop: Steel

<u>Loc. No. 2 - 3914 84th Ave. NW, New Town, ND 58763</u>:
Building #1                Steel Shop
Building #2                Shop

<u>Loc. No. 3 - Lot 1; Blk 6, Alexander Energy park, Alexander, ND</u>:
Building #1                Storage

<u>Loc. No. 4 - 4211 Hwy 8, Richardton, ND 58652</u>:
Building #1                Steel Shop
Building #2                TBD
Building #3                Office
Building #4                Propane/water Depot tanks/pumps

(Doc. No. 1). Conspicuously absent from this schedule was any explicit identification of a fifth location, *i.e.*, 8449 39th St. NW, New Town, or mention of the 39th St. Steel Shop.

In its Complaint, Estvold contends that the 39th St. Steel Shop was not really omitted from the insurance proposal but rather misidentified as Building #1 at Loc. No. 4, that there was mutual

2

understanding amongst the parties that 39th St. Steel Shop was covered by the policy, and that such coverage was calculated into the insurance premiums that were timely paid and that Hanover accepted. Specifically, Estvold asserts that its intent was clear from the outset that it was seeking coverage for all of its property, including the 39th St. Steel Shop; PayneWest understood this and twice inspected the 39th St. Steel Shop during coverage negotiations; PayneWest prepared an insurance proposal that listed a nonexistent property, Building #1 at Loc. No. 4; it and PayneWest mutually understood and agreed that the insurance proposal's reference to the Building #1 at Loc. No. 4 was in actuality the 39th St. Steel Shop; PayneWest acted as Hanover's agent at all times relevant to this action; and PayneWest's knowledge and understanding is imputable to Hanover.

On May 26, 2017, Hanover filed a motion to dismiss Estvold's claims against it pursuant to Fed. R. Civ. P. 12(b)(6). Estvold has filed a response in opposition and has requesting a hearing. PayneWest has filed a special response, staking out its position regarding its relationship to Hanover--it denies that it was Hanover's agent--but otherwise taking no position as to whether Estvold has pled its claims against Hanover with the requisite specificity. Hanover, in turn, has filed a reply in support of its motion.

## II. STANDARD OF REVIEW

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8 (a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates the dismissal of a claim if there has been a failure to state a claim upon which relief can be granted. In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009). A plaintiff must show that success on the merits is more than a "sheer possibility." Id. A complaint is sufficient if its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The court must accept all factual allegations as true, except for legal conclusions or "formulaic recitation of the elements of a cause of action." Id. at 681. A complaint does not "suffice if it tenders a naked assertion devoid of further factual enhancement." Id. at 678. The determination of whether a complaint states a claim upon which relief can be granted is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Dismissal will not be granted unless it appears beyond doubt the plaintiff can prove no set of facts entitling the plaintiff to relief. Ulrich v. Pope Cnty, 715 F.3d 1054, 1058 (8th Cir. 2013).

The court is generally confined to looking only to the allegations contained in the complaint to make a Rule 12(b)(6) determination. McAuley v. Fed. Ins. Co., 500 F.3d 784, 787 (8th Cir. 2007). However, the "court may sometimes consider materials outside the pleadings, such as materials that are necessarily embraced by the pleadings and exhibits attached to the complaint." Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003) (citing Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999)).

In assessing the sufficiency of Estvold's pleadings in this diversity action, the court shall apply state substantive law. See Bell v. Pfizer, Inc., 716 F.3d 1087, 1091 (8th Cir. 2013); Moses.com Sec., Inc., Comprehensive Software Sys., Inc., 406 F.3d 1052, 1063 (8th cir. 2005).

### III. DISCUSSION

#### A. Breach of Contract

"A breach of contract is the nonperformance of a contractual duty when it is due." WFND, LLC v. Fargo Marc, LLC, 2007 ND 67, ¶ 13, 730 N.W.2d 841. To establish a breach of contract,

4

the party asserting the breach must prove: (1) the existence of a contract; (2) a breach of the contract; and (3) damages which flow from the breach. Id.

Under N.D.C.C. § 9–07–02, "[t]he language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity." "The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable. Each clause is to help interpret the others." N.D.C.C. § 9–07–06.

Here, there is no dispute that the 39th St. Steel Shop was not explicitly listed amongst the properties to be covered in the insurance proposal. Seizing upon this, Hanover insists that, because the policy explicitly and unambiguously excluded coverage for the 39th St. Steel Shop, its denial of the claim for fire damage 39th St. Steel Shop cannot constitute a viable claim for breach of contract.

The gist of Estvold's response is that Hanover breached the contract that was intended. According to Estvold, there was a mutual understanding between PayneWest and Estvold that: (1) Estvold was purchasing coverage for all of its property, including the 39th St. Steel Shop; (2) the reference in the insurance proposal to Building #1 at Loc. No. 4 was a scrivener's error; (3) the aforementioned Building #1 was in actuality the 39th St. Steel Shop; and (4) PayneWest's knowledge and understanding can be imputed to Hanover by the fact that it was acting as its agent either in fact or because of its apparent authority.

Hanover denies that PayneWest was its agent. In its special response, PayneWest likewise denies it was Hanover's agent. Additionally, it disputes Estvold's assertion that the exclusion of the 39th St. Steel Shop from the insurance proposal was a mistake or that it had a mutual understanding with Estvold that Building #1 at Loc. No. 4 was in fact the 39th St. Steel Shop.

While the court has some doubt about whether PayneWest acted as Hanover's agent for

5

purposes of the negotiation of the policy, the resolution of that question is for another day since the court must accept as true what has been pled in the complaint for purposes of the motion to dismiss. Further, if the court was to reform the contract, then, theoretically, it is the breach of the reformed contract that would provide a basis for the recovery. At this point, the court will not dismiss the breach of contract claim.

### B. Declaratory Judgment

Hanover next contends that declaratory judgment in Estvold's favor would be inappropriate as Estvold is ostensibly seeking to reform its insurance policy as opposed to a determination of its rights under it and that such a claim is otherwise subject to dismissal on the ground that it is duplicative of the breach of contract claim. See Catalono v. BMW of N. Amer., LLC, 167 F. Supp. 2d 996, 563 (S.D.N.Y. 2016); MASTR Asset Backed Sec. Trust 2006-H3D ex. rel. U.S. Bank Nat. Ass'n v. WMC Mortg. Corp., 843 F. Supp. 2d 996, 1001 (D. Minn. 2012). Given the present posture of this case, however, the court is inclined to allow Estvold to proceed with this claim.

### C. Reformation and Specific Performance

"The construction of a written contract to determine its legal effect is generally a question of law." Freidig v. Weed, 2015 ND 215¶ 10, 868 N.W.2d 546, 215 (quoting Pear v. Grand Forks Motel Assocs., 553 N.W.2d 774, 779 (N.D. 1996)). "A court interprets a written contract to give effect to the mutual intention of the parties as it existed at the time of contracting." Id. (citing N.D.C.C. § 9–07–03. "The parties' intentions must be ascertained from the writing alone, if possible." Pear, 553 N.W.2d at 779 ; N.D.C.C. 9–07–04. "In the absence of an ambiguity, a written contract supersedes any prior oral agreement or negotiations between the parties." Pear, 553 N.W.2d at 779; N.D.C.C. § 9–06–07.

"If a written contract is unambiguous, however, parol evidence is nevertheless admissible

6

in an action to reform the contract on the grounds of mutual mistake to establish the alleged mistake and to correct the instrument to conform to the agreement or intention of the parties" Id. at ¶ 11; see also N.D.C.C. § 32-04-17 ("When, through fraud or mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved so as to express that intention so far as it can be done without prejudice to rights acquired by third persons in good faith and for value.").

"Reformation is an equitable remedy used to rewrite a contract to accurately reflect the parties' intended agreement." Spitzer v. Bartelson, 2009 ND 179, ¶ 22, 773 N.W.2d 798. The North Supreme Court has recognized that "equity will grant remedial relief in the nature of reformation of a written instrument, resulting from a mutual mistake, when justice and conscience so dictate." Ell v. Ell, 295 N.W.2d 143, 150 (N.D.1980). Whether a contract contains a mistake sufficient to support a reformation claim is a question of fact. Spitzer, 2009 ND 179, ¶ 22. State law defines a "mistake of fact" as follows:

> Mistake of fact is a mistake not caused by the neglect of a legal duty on the part of the person making the mistake and consisting in:
>
> 1. An unconscious ignorance or forgetfulness of a fact, past or present, material to the contract; or
>
> 2. Belief in the present existence of a thing material to the contract which does not exist, or in the past existence of such a thing which has not existed.

N.D.C.C. § 9-03-13.

Hanover asserts that the pleadings are deficient when it comes to the claimed entitlement to reformation. Specifically, it avers that the pleadings are devoid of any suggestion there was any mutual mistake and that Estvold's apparent failure to review the terms of the insurance proposal

does not constitute a valid basis for rewriting them after the fact. In so doing, it denies that PayneWest was its agent and, by extension, that PayneWest's knowledge and understanding can be ascribed to it. In its view, the fact that it was not named along with PayneWest in Estvold's claim for professional malpractice is telling.

The fact that Estvold is pursuing a claim against PayneWest for professional malpractice does not foreclose it from seeking, in the alternative, reformation. And, if PayneWest was acting as the agent of for Hanover as contended in the complaint, then what has been pled is sufficient to state a claim for reformation for reasons that are obvious.

Also, the court is not convinced that Estvold would not have a plausible claim for reformation based on mutual mistake, even if PayneWest was acting as its agent and not Hanover's. This is particularly true given (1) the allegation there was a building in the scheduled list of property that did not exist at the address indicated, but for which Hanover collected a premium, and (2) the allegation that the address should have been that of the building that was destroyed. While Hanover denies any mistake on its part, surely Hanover's practice is not to charge and collect premiums based on non-existent property.

In other words, this case would look a lot different if PayneWest was acting as Estvold's agent, the destroyed property was not included in the schedule of property due to the mistake of Estvold and/or PayneWest, and all of the other buildings in the schedule upon which the premiums were based actually existed and presented a risk of loss. But, that is not what is being alleged here. And, just because Hanover might rely upon others to determine whether the property it contracts to insure actually exists, the court cannot think of a reason - at least not one at this point - why that would relieve Hanover of the consequences of a mistake in charging a premium based in part on nonexistent property, if that is what happened.

8

The court will allow the claim for reformation to proceed forward.

**D.     Violation of the Unfair and Deceptive Insurance Practices Act**

Estvold's fourth and final claim against Hanover is that it violated the Unfair and Deceptive Insurance Practices Act, codified at Ch. 26.1-04. Specifically, Estvold alleges:

> 52.    Hanover's failure to pay insurance benefits was in bad faith and constituted unfair insurance practices under N.D.C.C. § 26.1-04-03, including but not limited to violations for:
>
>   a.    Not attempting in good faith to effectuate prompt fair and equitable resolution of Estvold's claim for benefits.
>
>   b.    Compelling Estvold to initiate this suit to resolve amounts due for insurance benefits.
>
>   c.    Failing to pay insurance benefits without having a reasonable basis for doing so.

(Doc. No. 1).

Hanover asserts this cause of action is unsustainable as the alleged misconduct, the wrongful denial of Estvold's fire loss claim, is a single act and therefore insufficient to establish a "general business practice" for purposes of § 26.1-04-03. For support it relies upon the North Dakota's Supreme Court's holdings in <u>Volk v. Wis. Mort. Assur. Co.</u>, 474 N.W.2d 40 (N.D. 1991), and <u>Dvorak v. Am. Family Mut. Ins. Co.</u>, 508 N.W.2d 329, 332-33 (N.D. 1993). It also cites to this court's decision in <u>Star Ins. Co. v. Cont'l Res., Inc.</u>, No. 4:12-cv-121, 2013 WL 11975128 (D.N.D. Feb. 20, 2013) [hereinafter referred to as "<u>Star</u>"].

In <u>Volk</u>, the North Dakota Supreme Court affirmed the lower court's dismissal on summary judgment of a claimed violation of the Unfair Insurance Practices Act by mortgage insurer, holding:

> We need not determine whether Chapter 26.1–04, N.D.C.C., creates a private civil right of action [see *Szarkowski v. Reliance Ins. Co.*, 404 N.W.2d 502, 504 (N.D.1987); compare *Farmer's Union Central Exchange v. Reliance Ins.* 626 F.Supp. 583, 590 (D.N.D.1985) with *Farmer's Union Central Exchange v. Reliance Ins. Co.*,

9

> 675 F.Supp. 1534, 1536–1538 (D.N.D.1987) and *Moradi–Shalal v. Fireman's Fund Ins.*, 46 Cal.3d 287, 250 Cal.Rptr. 116, 758 P.2d 58 (1988) ], because even assuming that it does, we agree with [the insurer] that these statutory provisions are as a matter of law not applicable under the circumstances of this case. Section 26.1–04–03(9) specifically requires that the proscribed acts be "performed with a frequency indicating a general business practice" to constitute an unfair claim settlement practice. Construing similar language in Mead v. Burns, 199 Conn. 651, 509 A.2d 11, 16 (1986), the Supreme Court of Connecticut held that claims of unfair settlement practices under its state act "require a showing of more than a single act of insurance misconduct." There is no evidence here that [the insurer] was involved in insurance misconduct with such a frequency indicating a general business practice.

Volk v. Wis. Mort. Assur. Co., 474 N.W.2d at 45. In Dvorak, it likewise held that a single alleged act of misconduct did not constitute an actionable claim under Ch. 26.1-04. 508 N.W.2d at 332.

In Star, this court embraced the North Dakota Supreme Court holdings in Volk and Dvorak and dismissed an insured's counterclaim against an insured for an alleged violation of Ch. 26.1-04.

> As it relates to the statutory claim, [the insured] has not alleged that [the insurer's] actions were taken with a frequency sufficient to constitute a general business practice. Nor has [the insured] alleged that [the insurer] acted without just cause, although it may arguably be implied from the allegation of bad faith. What is fatal to the claim is that [the insured] has alleged only a single instance of misconduct. Volk and Dvorak make it clear that a single instance of misconduct is insufficient. [The insurer] has pled no facts which support the proposition that [insurer] has engaged in unfair practices with a frequency sufficient to constitute a general business practice. Rule 8 does not "unlock the doors of discovery" to support an allegation premised upon mere conclusions. Iqbal, 556 U.S. at 678-79. [The insured] has failed to plead both the elements of a statutory claim under N.D.C.C. § 26.1-04-03(9) and facts [that] might support such a claim. Thus, the Court concludes that [the insured's] claim under Section 26.1-04-03(9) of the North Dakota Century Code fails as a matter of law.

Star, 2013 WL11975128, at *2.

Estvold's response is somewhat nuanced. Estvold does not challenge the legal authority upon which Hanover relies. Rather, it takes issue with Hanover's assertion that its denial of the fire loss claim constituted a single act. Specifically, it avers that Hanover denied its fire loss claim six times between May and July 2016 as evinced by emails attached to its responsive brief, that each

10

denial by Hanover constituted a separate act for purposes of § 26.1-04-03, and that collectively these denials are demonstrative of a pattern or practice for purposes of § 26.1-04-03. It further avers that Hanover engaged in other conduct, *i.e.*, the denial of payment to a third-party vendor for work done on the 39th St. Steel Shop in July 2016 and the denial of coverage on an unrelated claim made by Estvold for a skid steer loader - that are further demonstrative of a pattern or practice of deceptive and unfair insurance practices.

Common sense would seemly dictate that, for purposes of Ch. 26.1-04, the repeated denial of the same claim on the same grounds constitutes a single act as opposed to a pattern or practice. Otherwise every insured could arguably "manufacture" a claim against every insurer under Ch. 26.1-04 by repeatedly resubmitting claims that the insurers had denied in the first instance.

In any event, Estvold's pleadings are devoid of any explicit assertion that Hanover engaged in a pattern or practice; tellingly, Estvold complains about the denial of its claim in the singular, not in the plural. Moreover, Estvold has cited no authority to support the assertion it makes in its responsive brief that each denial of the same claim by Hanover on the same grounds constitutes a pattern or practice for purposes for § 26.1-04-03. Finally, Estvold's assertion in its responsive brief that Hanover's refusal to pay a third-party vendor and denial of an unrelated claim as evidence of a pattern or practice are unavailing. The pleadings make no mention of such conduct. And for purposes of the instant motion, the court must focus on what is in the pleadings.

The basis for Estvold's Unfair and Deceptive Insurance Practices Act claim is that Hanover wrongfully denied its fire loss claim. As this denial does not constitute a pattern for purposes of the Act, the pleadings fail to articulate claim for which relief may be granted under the Act.

## IV. CONCLUSION

Hanover's motion to dismiss (Doc. No. 26) is **GRANTED IN PART AND DENIED IN**

**PART**. Estvold's Unfair and Deceptive Insurance Practices Act claim is **DISMISSED WITHOUT PREJUDICE**. Estvold may proceed with the remainder of its claims against Hanover. Estvold's motion for a hearing (Doc. No. 34) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 27th day of April, 2018.

                                                      */s/ Charles S. Miller, Jr.*
                                                      Charles S. Miller, Jr., Magistrate Judge
                                                      United States District Court