# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Estvold Oilfield Services, Inc., | ) |
|     Plaintiff, | ) **ORDER RE PENDING MOTIONS** |
| | ) **FOR SUMMARY JUDGMENT AND** |
| vs. | ) **FOR RELIEF FROM THE** |
| The Hanover Insurance Company and | ) **SCHEDULING ORDER** |
| PayneWest Insurance, Inc., | ) |
| | ) Case No. 1:17-cv-016 |
|     Defendants. | ) |

Before the court are the following motions:

1. The Hanover Insurance Company's ("Hanover's) motion for summary judgment.

2. PayneWest Insurance, Inc.'s ("PayneWest's") motion for summary judgment.

3. Estvold Oilfield Services, Inc.'s ("Estvold's") motions to reopen the time for fact discovery.

4. Estvold's motion to reopen the time for disclosing expert opinions and for time to complete and file a Rule 26(A)(2) expert witness report.

**I.    BACKGROUND**

Unless otherwise indicated, the following facts have either not been reasonably controverted or are stated most favorably for Estvold.

Estvold is an oilfield services company that is headquartered several miles east of New Town, North Dakota, where it has a number of building and other structures at several rural locations all within several miles or less of each other. Relevant to this case, these include:

1. Two large shops, including offices, located at 3914 84th Ave. NW

2. Two smaller buildings and other structures located at 4211 Hwy 8.

1

3. A shop and an addition, which were under construction during the time relevant to this action, at 8449 39th St.

For ease of reference, these locations may be referred to as the 84th Ave., the 4211 Hwy 8, and the 39th St. locations, respectively.

This case arises out of a fire that occurred at the 39th St. location in May 2016, which Hanover, Estvold's property insurance carrier, refused to cover because the 39th St. location was not listed on the schedule of insured locations in its policy. In this action, Estvold sues Hanover on several different theories claiming that the structure at the 39th St. location was included in the policy but was erroneously listed as being at the 4211 Hwy 8 location, which was also erroneously described as being near Richardton, N.D. and not New Town. Estvold also sues PayneWest, its insurance broker, on several different theories alleging that PayneWest was responsible for the mistakes in its policy and Hanover's refusal to cover the loss.

Prior to January 2015, Estvold used Leavitt Great West Insurance Services ("Leavitt") as its broker for the procurement of insurance. In late 2014, PayneWest, a competing broker, made a sales call upon Estvold for the purpose of securing its business. In January 2015, Estvold decided to switch it business and entered into an agreement with PayneWest for brokerage services. For a flat fee of $60,000 per year, PayneWest would (1) place the coverages elected by Estvold after obtaining PayneWest's advice on what coverages were available and would be appropriate, and (2) provide a number of additional ancillary services. While the language of the written contract is somewhat general, PayneWest represented to the North Dakota Insurance Department in securing its approval of the agreement that PayneWest would be providing the following services to the Estvold:

1. Placement of all insurance policies in lieu of commission
2. Safety compliance

3. Loss Control Services
4. Contract Review
5. ISN/PEC Compliance
6. Creation of Safety messages for Employees
7. Safety Consulting Visits by our on Staff Safety Team
8. Certificate/ID Cards
9. Claims Reviews-As needed.
10. Audit Control.

On January 14, 2015, there was an in-person meeting in one of Estvold's shops at the 84th Ave. location to discuss a proposal that PayneWest would submit to various insurance carriers to obtain quotes for the upcoming policy year beginning January 31, 2015. Attending the meeting from Estvold were Mike Borgschatz, who was taking the lead in procuring the insurance on behalf of Estvold, and Chander Rush, who had a much lesser role. The persons attending on behalf of PayneWest included Brady Hoiness and his brother Devon Hoiness who were the PayneWest principals responsible for the engagement.

At that point, PayneWest's draft proposal was incomplete in terms of the property to be covered. What was discussed during the meeting with respect to what additional property Estvold wanted covered and where it was all located is disputed. Relevant to what follows, Borgschatz testified in his deposition that he advised PayneWest that one of the additional properties Estvold wanted covered was a building Estvold was in the process of constructing located less than a mile away and kitty-corner from the shop at which they were meeting. Borgschatz testified there was some discussion about the advisability of the contractor having builder's risk insurance on the property, but that he wanted Estvold to have its own coverage up to a million dollars. He testified that Brady Hoiness asked about the address and he (Borgschatz) told him that a street address had not yet been assigned to the rural lot that ultimately became 8449 39th St. Borgschatz testified that Brady Hoiness assured him this would not be a problem.

3

Following this meeting, PayneWest revised the proposal one or more times before soliciting its final quote from Hanover to include additional properties. It is not clear whether the proposal as finally revised and sent out for quote to Hanover's broker was forwarded to Estvold prior to PayneWest binding coverage with Hanover for the policy period beginning January 31, 2015 and ending January 31, 2016.

The following are the locations that were ultimately included in the Hanover policy as covered locations. While in a slightly different format, the information is the same as set forth in the policy:

| Loc. No. | Description of Covered Locations | Coverage limits |
|---|---|---|
| 1-1 | 3962 84th Ave. NW, NEW TOWN, ND, 58763 (OFFICE/SHOP)<br>Building<br>Business personal property | $1,500,0000<br>$100,000 |
| | | |
| 2-1 | 3914 84th Ave. NW, NEW TOWN, ND, 58763 (SHOP)<br>Building<br>Business Personal property | $1,500,000<br>$250,000 |
| 2-2 | 3914 84th Ave. NW, NEW TOWN, ND, 58763 (SHOP)<br>Building<br>Business Personal property | $1,500,000<br>$100,000 |
| | | |
| 3-1 | LOT 1, BLOCK 6, ALEXANDER ENERGY PARK, ALEXANDER, ND 58831 (STORAGE)<br>Building | $1,040,000 |
| | | |
| 4-1 | 4211 HWY 8, RICHARDTON, ND 58652 (SHOP)<br>Building<br>Business Personal property | $1,000,000<br>$100,000 |
| 4-2 | 4211 HWY 8, RICHARDTON, ND 58652<br>Building<br>Business Personal property | $280,000<br>$20,000 |

| 4-3 | 4211 HWY 8, RICHARDTON, ND 58652 (Office) Building  Business Personal property  Propane Tanks, Propane & Water Depot Tanks, & Pumps | $180,000 $25,000 $135,000 |

It appears that the locations added to PayneWest's proposal prior to obtaining the final quote from Hanover were numbers 2-2, 3-1, 4-1, 4-2, and 4-3. In obtaining the final quote from Hanover, PayneWest did not deal directly with Hanover. Rather, it worked with Hanover's broker, Sloan Mason.

After PayneWest submitted its revised proposal to Sloan Mason that included the additional properties, Sloan Mason responded that more information was required for the properties listed in the proposal for purposes of Hanover's underwriting. It appears that PayneWest then obtained, from sources not entirely clear at this point, the additional information with respect to the properties, including that which was listed in the Hanover policy as Loc. No. 4-1. The additional information with respect to location 4-1 was that it was an 11,000 sq. ft. steel building along with a date of 2011. While this additional detail was not specifically set forth in the final policy, it appears to have been provided by PayneWest to Sloan Mason prior to coverage being bound. This is because Hanover's quote stated in relevant part with respect to Loc. No. 4-1:

| 4-1 | 4211 Hwy 8, Richardton, ND 58652 (Shop: Steel, 2011, 11,000 SQ FT) |

In other words, to put a finer point on it, this is the information that Hanover had when it agreed to provide coverage for the building at Loc. No. 4-1.

Estvold claims in this case that PayneWest made two errors in the information it provided to Sloan Mason and upon which Hanover scheduled its coverage that are material to this case. The

5

first is that since Estvold had no property in the vicinity of Richardton, N.D., the information that PayneWest provided and that resulted in the policy listing Loc. Nos. 4-1, 4-2, & 4-3 as being at 4211 Hwy 8, Richardton, N.D. was erroneous to that extent. The proper address for Loc. Nos. 4-2 and 4-3 is 4211 Hwy 8, New Town, N.D. With respect to Loc. No. 4-1, the situation is more complicated and will be returned to in a moment.

For those readers of this order not familiar with North Dakota geography, New Town is located on the north side of Lake Sakakawea on the Fort Berthold Indian reservation in Mountrail County. It is in heart of the active oilfield operations. Richardton, on the other hand, is located along I-94 some 75 miles south of New Town in Stark County. It is well south of the Fort Berthold Indian Reservation and on the periphery of active oilfield operations.

It is clear from the record that the "wrong city" mistake was initially made by Brady Hoiness. When Sloan Mason asked for specific addresses for the property in the PayneWest proposal, Brady Hoiness had 4211 Hwy 8 as a location for certain of the additional property. Hoiness testified in his deposition that to get more detailed information he inputted that address into Google Earth and the only location that popped up was 4211 Hwy 8, Richardton, North Dakota, so he provided that address to Hanover's broker by email for the property at Loc Nos 4-1, 4-2, & 4-3. Notably, he did not check with Estvold, apparently not curious as to why Estvold had locations in a City different from what had been discussed up to that point and different from Estvold's principal base of operation, which was New Town. Brady Hoiness's "wrong city" mistake was further compounded by PayneWest when his brother Devon Hoiness discovered the mistake and provided the correct address to other PayneWest personnel who then failed to input the corrected address into its system. The net result was that the final proposal printed out from PayneWest's system and sent to Sloan

Mason for quote referenced Richardton for the 4-1, 4-2, and 4-3 locations and not New Town.[1]

The second mistake that Estvold claims that PayneWest made is that it has only two buildings at the 4211 Hwy 8 location and those are the buildings that were scheduled in the Hanover policy as Loc. Nos 4-2 and 4-3. Estvold claims that the building that was scheduled as Loc. No. 4-1 at 4211 Hwy 8 was the building that it had under construction at the 39th St. location less than a mile from its main shops where the January 2015 meeting with PayneWest took place and several miles south of the buildings at the 4211 Hwy 8 location.

What is not clear from the record presently before the court is how Loc. No. 4-1 got into the policy and whether PayneWest intended Loc. No. 4-1 to be the 39th St. building that was under construction and that ultimately suffered the fire loss. There is some evidence that PayneWest took the 4-1, 4-2, and 4-3 locations at 4211 Hwy 8 off a competing proposal made by Leavitt, but the circumstances under which it may have done so remain murky and leave a number of unanswered questions. These include: What, if anything, did PayneWest do to confirm the information it used from the Leavitt proposal? Assuming PayneWest was told by Estvold that it wanted the building that was under construction to be covered, how and why did PayneWest assume that the new building was located at 4211 Hwy 8, Richardton, North Dakota if it was told it was being constructed less than a mile from Estvold's main shops just outside of New Town? Or, did PayneWest forget about the building under construction (again assuming it had been told about it) and then assume there were three other buildings that needed to be covered at the 4211 Hwy location?

As noted earlier, it is not clear what, if any, of PayneWest's last minute changes to the

---

[1] While the record before the court does not reflect one way or the other, the court suspects that the 4211 Hwy 8 Richardton address, like the 4211 Hwy New Town address, is a rural location, *i.e.*, it is not located in Richardton.

property being included for coverage were contemporaneously communicated back to Estvold. Also, it is not clear whether Estvold was given Hanover's written quote prior to coverage being bound. Finally, it is not clear what was provided to Estvold immediately after coverage was bound, if anything, other than confirmation that coverage had been secured and a bill. There is some evidence which suggests that the actual policy (which a carrier usually does not send out until sometime after coverage is bound) was not physically delivered to Estvold until months later when PayneWest had another in-person meeting with Estvold on September 30, 2015, to address topics of safety and during which PayneWest claimed it reviewed coverages with Estvold.

Prior to the September 30, 2015 meeting, Estvold decided it was going to expand the building that was under construction at the 39th St. location and, in April 2015, entered into a contract for the expansion or addition, depending upon how it is viewed. There appears to be little or nothing in the record addressing whether the expansion/addition was discussed with PayneWest during the September 2015 meeting.

In January 12, 2016, there was another in-person meeting in one of Estvold's shops at the 84th Ave. location to discuss the upcoming renewal of the Hanover policies for the 2016–17 policy year, beginning January 31, 2016. Present at the meeting were Borgschatz and Rush from Estvold and Brady and Devon Hoiness from PayneWest. During the meeting, a property schedule was reviewed but the claimed errors discussed above were not recognized or corrected by either Estvold or PayneWest.

More specifically, Devon Hoiness, who had attempted to correct the "wrong-city" error a year earlier in an email to PayneWest staff that was not acted on, did not recall or notice the error during the meeting. Further—and what a jury might find troublesome—after more than a year and PayneWest having billed $60,000 for its services and on the cusp of billing another like amount, is

8

Brady and Devon Hoiness apparently not knowing enough about their customer's business (particularly given the scope of services PayneWest was providing) to be aware of: (1) the building that Estvold had under construction at the 39th St. location, which appears to be located just off the road that they undoubtedly had traveled several times to get to the 84th Ave. location; and (2) the fact that a substantial amount of the property listed in its proposal for renewal was not in Richardton but rather was in the immediate vicinity of where they were meeting.

Also, apart from this, Borgschatz claims he took Brady and Devon Hoiness to the 39th St. location when they met to discuss the renewal of the policy on January 12, 2016 to show them what the building was going to be used for. He testified that, although Estvold was in the process of putting equipment into the building, he was able to explain how it was going to operate and that Brady and Devon were impressed. Brady and Devon Hoiness both deny they ever were at the 39th St. location. Chander Rush testified that he recalled at least one instance when everyone went to the 39th St. location but could not recall which of the in-person meetings it was.[2]

Equally troubling, on the other hand, is the explanation given by Borgschatz for why he did not catch the errors that Estvold now claims as the basis for its action. Borgschatz's explanation was that he simply looked to see whether all of the building that Estvold wanted coverage for were listed without focusing upon the particular addresses. A jury might find that explanation wanting after listening to that explanation and comparing it to the document he likely reviewed. Also, there is no evidence at this point that Borgschatz expressed any concern about the insured amount for the 39th St. location being sufficient going into the next policy year with the expansion or addition.

The Hanover policy was renewed at the end of January 2016 for the policy year extending

---

[2] Notably, if there was such a tour, neither Brady nor Devon Hoiness could have believed they were visiting the 4211 Hwy 8 location, because, at that point, they apparently still believed this was in Richardton.

from January 31, 2016 to January 31, 2017. There were no changes to the scheduled property from the previous policy.

On May 13, 2016, there was a fire at the 39th St. location. The original building for which construction began in late 2014 or early 2015 suffered damage primarily to one wall. There is some evidence that the estimate for the repair of the wall was approximately $190,000. The expansion or addition was a total loss, but the amount of the loss is not reflected in the current record.

While not entirely clear, there is evidence that, when the fire occurred, the building for which construction began in late 2014 or early 2015 had been substantially complete for some time, but, perhaps, not fully complete because of the expansion or addition. Also, there is evidence that, even with the expansion or addition, the construction was basically complete and the only thing that remained was any "punch list" work that may have been required.

There is some evidence, albeit circumstantial, which suggests that the original building as constructed was approximately 11,000 sq. ft. There is also some suggestion in the record that Estvold attempted to secure coverage for an 18,000 sq. ft. reconstructed building(s) at the 39th St. location, but that this square footage may not be an accurate reflection of what the combined square footage of the original building and the expansion or addition was prior to the fire because Estvold made some changes during the reconstruction.

Following the loss, PayneWest submitted a claim to Hanover on behalf of Estvold and urged it to cover the loss. In connection with that effort, Devon Hoiness submitted the following information to Sloan West:

Grant-

So, some clarification per the insured on the locations at 4211 Highway 8. Will you please pass on to Hanover?

The location on the policy shows this location 4 at 4211 Highway 8 in "Richardton, ND"

10

[sic]. This location is supposed to be 4211 Highway 8 in "New Town, ND". This location is about 1 mile NorthEast of their main shops at 3914 84th Avenue in New Town. At this location they have a small shop, a small office building, and propane/Water tanks. On our policy we have another shop (11,000 + square feet) insured as building 1. It appears this shop is the building that had the fire. However, this building that they have listed at the 4211 Highway 8 Location should have been described as 8449 39th in New Town (about 1 mile away). They paid premium on this building but appears the addresses were mixed up.

I think we need to have Hanover do a thorough investigation of these locations. However, please be clear that there are no locations in "Richardton ND". This 4211 Highway 8 is just outside of New Town.

Thanks--call with any questions.

-Devan-

In addition, the North Dakota Insurance Commissioner's office also urged Hanover to cover the loss.

As noted earlier, Hanover refused to cover any portion of the loss. However, it did offer to return a portion of the premium if Estvold demonstrated there was not a building at the 4-1 location.

## II. DISCUSSION

### A. Hanover's motion for summary judgment

#### 1. Governing law

The law governing summary judgment is well known to the court and need not be repeated here. E.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Lonesome Dove Petroleum, Inc. v. Holt, 889 F.3d 510, 514 (8th Cir. 2018).

#### 2. Estvold's claim for reformation

##### a. North Dakota law governing reformation

In North Dakota, reformation of a contract is governed by N.D.C.C. § 32-04-17, which provides:

> When, through fraud or mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved so as to express that intention so far as it can be done without prejudice to rights acquired by third persons in good faith and for value.

11

In addition, the North Dakota Supreme Court has stated the following with respect to a claim for reformation that is based upon mutual mistake:

> [¶ 11] If a written contract is unambiguous, however, parol evidence is nevertheless admissible in an action to reform the contract on the grounds of mutual mistake to establish the alleged mistake and to correct the instrument to conform to the agreement or intention of the parties. Ell v. Ell, 295 N.W.2d 143, 149 (N.D.1980). We have said a " 'mutual mistake that will justify reformation requires that, at the time of the execution of the agreement, both parties intended to say something different from what was said in the document.' " Arndt v. Maki, 2012 ND 55, ¶ 12, 813 N.W.2d 564 (quoting Heart River Partners v. Goetzfried, 2005 ND 149, ¶ 15, 703 N.W.2d 330). Reformation is an equitable remedy used to reframe written contracts to reflect accurately the real agreement between contracting parties. Spitzer v. Bartelson, 2009 ND 179, ¶ 22, 773 N.W.2d 798. * * * *
>
> [¶ 12] A party seeking reformation has the burden to prove by clear and convincing evidence that a written agreement does not fully or truly state the agreement the parties intended to make. Ell, 295 N.W.2d at 150. Parol evidence of an alleged mutual mistake must be clear, satisfactory, specific, and convincing, and a court of equity will not grant reformation upon a mere preponderance of evidence, but only upon certainty of error. Id. Any evidence that tends to show the true intention of the parties, whether it be evidence of conduct or declarations of the parties extrinsic to the contract or documentary evidence, is admissible. Id. at 149. See N.D.C.C. 32–04–19. "In considering whether or not a mutual mistake exists, the court can properly look into the surrounding circumstances and take into consideration all facts which disclose the intention of the parties." Ell, at 150 (emphasis in original). Some courts have said circumstantial evidence alone may be sufficient to clearly and convincingly establish grounds for reformation. Lister v. Sorge, 260 Cal.App.2d 333, 67 Cal.Rptr. 63, 66–67 (1968) (grounds for reformation must be established by clear and convincing evidence and reformation may be based solely on circumstantial evidence); Lunceford v. Houghtlin, 326 S.W.3d 53, 64 (Mo.Ct.App.2010) (circumstantial evidence may establish mutual mistake provided the natural and reasonable inferences clearly and decidedly prove the mistake). Cf. WFND, LLC v. Fargo Marc, LLC, 2007 ND 67, ¶¶ 25–26, 730 N.W.2d 841 (fraud must be proved by clear and convincing evidence and intent to defraud usually is not susceptible of direct proof but may be established by circumstantial evidence); State v. Noorlun, 2005 ND 189, ¶ 20, 705 N.W.2d 819 (circumstantial evidence alone can be sufficient to sustain guilty verdict if circumstantial evidence has such probative force as to enable trier of fact to find defendant guilty beyond a reasonable doubt).
>
> [¶ 13] Whether a contract contains a mistake sufficient to support a claim for reformation is a question of fact. Johnson v. Hovland, 2011 ND 64, ¶ 11, 795 N.W.2d 294; Spitzer, 2009 ND 179, ¶ 23, 773 N.W.2d 798; Goetzfried, 2005 ND 149, ¶ 15, 703 N.W.2d 330. Under N.D.R.Civ.P. 52, we will not set aside a district court's findings of fact unless they are clearly erroneous, and due regard shall be given to the opportunity of the district court to judge the credibility of the witnesses. "A finding is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if an appellate court is left with a definite and firm conviction a mistake has been made." Spitzer, at ¶ 23 (quoting City of Fargo v. D.T.L. Properties, Inc., 1997 ND 109, ¶ 16, 564 N.W.2d 274.).

Freidig v. Weed, 2015 ND 215, ¶¶ 13, 868 N.W.2d 546, 550.

### b. Estvold's argument that PayneWest's mistakes are to be imputed to Hanover for purposes of deciding whether to reform the policy

Estvold argues that both it and PayneWest intended that the building described in the Hanover policy as Loc. No. 4-1 was the building at the 39th St. location and that the description of the building as being located at 4211 Hwy 8, Richardton, N.D. was a mutual mistake. For purposes of its claim against Hanover, Estvold argues that PayneWest's knowledge and intentions are imputable to Hanover, contending that PayneWest was acting as Hanover's agent.

The indisputable evidence, however, is that PayneWest was acting as Estvold's broker and agent—not Hanover's. In fact, Hanover employed its own broker. Under these circumstances, PayneWest's knowledge and intentions cannot be imputed to Hanover for purposes of Estvold's claim for reformation. See Secura Ins. Co. v. J.R. Saunders, 227 F.3d 1079–81 (8th Cir. 2000) (applying Missouri law). In reaching these conclusions, the court rejects Estvold's statutory arguments based on N.D.C.C. §§ 26.1-26-06 & 26.1-26-07. Whatever application these statutes might have in other circumstances, neither applies to the situation here where the express agreements of the parties govern what the relationships are.

### c. Estvold's argument for reformation based on Hanover's mistake

Estvold argues that Hanover made a mistake by insuring a building described in its policy as Loc. No. 4-1 because there was no building of that description at the address indicated. Hanover denies there was any mistake on its part and that it at all times intended to insure a building described in the policy as Loc. No. 4-1 and located at 4211 Hwy 8, Richardton, N.D. While it may simply be a matter of semantics, it appears there was a mistake on Hanover's side of the ledger, so to speak, unless one assumes it is a normal business practice for Hanover to collect premiums upon and insure non-existent buildings.

In the court's view, the real issue with respect to Estvold's claim for reformation is whether there was a mutual agreement to insure the building that suffered the loss, such that the policy should be reformed to conform to that agreement. And with respect to this point, Estvold has not come forward with sufficient evidence to demonstrate there is a triable issue in light of the evidence to the contrary.

More particularly, the evidence (including particularly Hanover's 2015 quote) is that Hanover agreed to insure a building identified in its policy as Loc. No. 4-1 at 4211 Hwy 8, Richardton, N.D. and not a building located some 75 miles away in a different county. Further, even if one was to overlook this geographic difference, the evidence before the court (again which has Estvold has failed to sufficiently dispute for purposes of summary judgment) indicates there were other differences in what the parties separately intended. Hanover's 2015 quote reflects with respect to the building scheduled as Loc. No. 4-1 an intent to insure an existing (2011) steel building approximately 11,000 sq. ft. in size—not a building that was under construction and substantially bigger if one includes the addition, which is what Estvold claims it intended that the policy cover.

Under North Dakota law, the court can only reform an agreement based upon mutual mistake when the parties intended to agree to the same thing but the mistake prevented that agreement from coming to fruition. In this case, Estvold has failed to come forward with sufficient evidence to create a triable issue over whether there was a mutual understanding between Hanover[3] and Estvold over what was to be insured with respect to the building at issue in this case, such that this court

---

[3] If PayneWest had been Hanover's agent, the situation would be different and there likely would be an issue for trial as to Hanover since what PayneWest knew and intended would then be chargeable to Hanover. The fact that PayneWest was Estvold's broker and not Hanover's distinguishes this case from cases where courts have found there was a mutual understanding that could be enforced by reformation based upon the knowledge and intentions of the insurance company's agent. See, e.g., First. Nat. Ins. Co. v. Norton, 238 F.2d 949, 950–51 (10th Cir. 1956); Moreland v. State Farm and Cas. Co., 662 S.W.2d 556, 55–61 (Mo. Ct. App. 1983); Moisman v. Rapacz, 84 N.W.2d 898, 900–03 (Minn. 1957).

could reform the policy to provide Estvold relief—all or in part.[4] See, e.g., Pumlee v. Monroe Guar. Ins. Co., 655 N.E.2d 350 (Ill. Ct. App. 1995) (concluding that reformation could not be granted because the evidence was insufficient to establish a mutual intention to insure the property that suffered the loss).–

### 2. The remaining claims against Hanover

Estvold has no claim for breach of contract unless the contract was to be reformed. This is because the unambiguous language of the policy covers only property at scheduled locations. As for Estvold's claim for declaratory relief, anything the court could declare is already addressed by its rulings on the claims for reformation and breach of contract.

### C. PayneWest's motion for summary judgment

#### 1. PayneWest's argument that it is entitled to summary judgment because Estvold failed to disclose expert testimony that PayneWest claims is required to make out a prima facie case for either negligence or breach of contract

---

[4] In so holding, the court is cognizant that it is denying reformation - even that limited to include only the original 11,000 sq. ft. structure without the addition—despite: (1) there being evidence that (a) the original building at the 39th St. location was approximately 11,000 sq. ft., (b) the only two structures at 4211 Hwy 8 are the those separately identified as Loc. Nos. 4-2 & 4-3, and (c) Estvold owning no other steel buildings approximately 11,000 sq. ft. that it could argue were covered had the fire occurred there; and (2) Hanover having made no particularized showing that it likely either would not have insured the building, or would have done so only for a higher premium, if it had been apprised of all of the correct information. With respect to the latter, Hanover offered a conclusory affidavit that suggested only that it might have rated the property differently and offering the unhelpful and somewhat disingenuous example that property in Florida might be rated differently than the property in North Dakota. Also, troublesome in this regard is a Risk Evaluation Survey that Hanover (or one of its agents) conducted of Estvold's business in August 2015, which was during the first policy period and prior to renewal of the policy in January 2016. For some unexplained reason, the survey addressed only the 84th Ave property, where Estvold's two principal shops are located and that were included in the policy as Loc. Nos. 2-1 and 2-2. There was no mention in the survey of the other property insured under the policy, including at 4211 Hwy 8, whether it be Richardton or New Town, N.D. Further, the survey reported that (1) the north shop at the 84th Ave location was estimated to be 25,600 sq. ft. and was constructed in 2014, and (2) the south shop was estimated to be 30,000 sq. ft. and constructed in 2015 (which means it was constructed or under construction when the policy period commenced). Notably, this information differs substantially from what Hanover included in the descriptions contained in its 2015 quote that described the buildings at Loc Nos. 2-1 and 2-2 as both being 2012 steel buildings 18,000 sq. ft. in size. There is no evidence which suggests that when Hanover received this information with a number of months to go under the 2015–16 policy period, it held up its hand and questioned the disparity between what its survey reported and what it now claims were matters material to its rating of the subject property. If the court has erred by either misconstruing or too narrowly applying North Dakota's law on reformation, then there likely are material facts in dispute that would require a trial on the issue.

15

PayneWest argues that Estvold cannot make out a prima facie case for negligence on PayneWest's part without expert testimony that would establish the standard of care for an insurance broker acting under the same circumstances and then whether that standard of care was breached. In support, PayneWest cites to North Dakota cases holding that expert testimony with respect to both matters was required to sustain a claim for professional negligence on the part of attorneys or doctors. PayneWest argues that the same proof is also required as a practical matter to demonstrate whether PayneWest breached its contract with Estvold. Finally, from these points, PayneWest argues that Estvold's claims for negligence, malpractice, and breach of contract must be dismissed because Estvold failed to disclose the requisite expert opinions within the time period allowed by the court's progression order.

The court rejects PayneWest's argument that it is entitled to summary judgment on these grounds. While it is true that North Dakota law requires expert testimony to establish both the standard of care and whether that standard was breached to make out a prima facie case of professional negligence in many cases, expert testimony is not required when the wrongfulness of the conduct involved is within the common knowledge of laypersons. See, e.g., Klimple v. Bahl, 2007 ND 13, ¶ 6, 727 N.W.2d 256.

In this case, even if the court was to assume that all of the alleged wrongful acts or failures to act on the part of PayneWest involved professional as opposed to run-of-the-mill commercial services, the court concludes expert testimony is not required for at least some of what Estvold appears to be claiming that PayneWest did wrong. This includes any mistakes that PayneWest made in describing the property to be insured as well as the issue of whether PayneWest failed to secure coverage on a building at the 39th St. location that Estvold claims it specifically requested. These are matters that a jury can understand and fairly decide without the assistance of an expert. See, e.g.,

16

Consolidated Sun Ray, Inc. v. Lea, 401 F.2d 650, 658 (3d Cir.1968) (agent's "efforts to fulfill contractual obligations palpably insufficient" and not requiring expert testimony to support the claim); Allstate Property and Cas. Ins. Co. v. Mirkia, No. 2:12-cv-01288, 2014 WL 2801310, at **1–5, 12–13 (D. Nev. June 19, 2014) (expert testimony not required to sustain a claim against an insurance agent for failing to accurately complete and update an insurance application including whether the broker knew or should have known of alleged inaccuracies in the application); CIGNA Prop. & Cas. Co. v.Zeitler, 730 A.2d 248 (Ct. Sp. App. Md. 1998) (expert testimony not required for the failure to secure requested coverage); Clary Insurance Agency v. Doyle, 620 P.2d 194 (Ala. 1980) (same); see generally Lori J. Henkel, Annot: Necessity of Expert Testimony to Show Standard of Care in Negligence Action Against Insurance Agent or Broker, 52 A.L.R.4th 1232 (1987) (discussing cases that address when an expert is required to support a claim of negligence on the part of an insurance agent or broker and when an expert is not required).

### 2. PayneWest's remaining arguments

PayneWest contends it was never put on notice that Estvold was making a claim for breach of the brokerage agreement that it had with PayneWest. After carefully reviewing the complaint, the court disagrees. Estvold pled sufficient facts in the complaint to make out a cognizable claim for breach of the brokerage agreement. See, e.g., Topchian v. JPMorgan Chase Bank, N.A., 760 F.3d 843, 848 (8th Cir. 2014) ("The well-pleaded facts alleged in the complaint, not the legal theories of recovery or legal conclusions identified therein, must be viewed to determine whether the pleading party provided the necessary notice and thereby stated a claim in the manner contemplated by the federal rules.") (internal quotations and citing authority omitted).

PayneWest also contends that Estvold has no claim for reformation of Hanover's policy as to it as well as for the companion request for declaratory judgment. The court agrees. The only

17

viable claims that Estvold has at this point are claims for breach of contract, negligence, and malpractice, with the latter two being essentially the same thing. With respect to these claims, the court concludes there are material facts in dispute that require a trial.

### D. Estvold's motions for relief from the court's progression order allowing it to conduct additional discovery and to disclose expert testimony

The court denies Estvold's motions to enlarge the time periods set forth in the court's progression order for completion of fact discovery and for disclosure of expert testimony. The deadlines for completing this work passed and the court finds lacking Estvold's reasons for why the time periods should be enlarged, including why it did not request relief earlier than it did, to be insufficient. While the court makes its decision for this reason, it appears unlikely that the additional discovery with respect to Hanover's potential liability would have produced information on beyond what is already known that the court would consider *material* to the claim for reformation, particularly given the court's reasons for denial of the claim. Also, with respect to the motion to now add an expert, the court has concluded an expert is not necessary for at least a significant amount of what Estvold wants to present. In fact, expert testimony on matters that do not require an assistance of an expert may be of questionable admissibility.

Finally, with respect to the motion to disclose an expert, the court understands that PayneWest also did not disclose testimony from a retained expert—or at least did not do so within the time permitted by the court's scheduling order. What is sauce-for-the-goose is sauce-for-the-gander. However, if both parties come to an agreement and decide they want to proceed with retained experts, the parties are to contact the court within the next five days to further discuss this

matter, including whether a continuance would then be required.[5]

### III. ORDER

Based on the foregoing, the court:

1. **GRANTS** Hanover's motion for summary judgment (Doc. No. 58) and **DISMISSES WITH PREJUDICE** the complaint as to it.

2. **GRANTS IN PART** and **DENIES IN PART** PayneWest's motion for summary judgment (Doc. No. 63) in that the motion is **DENIED** as to the claims for breach of contract, negligence, and malpractice and is **GRANTED** as to all other claims.

3. **DENIES** Estvold's motions to reopen discovery and to allow the disclosure of a retained expert (Doc. Nos. 53 & 74).

**IT IS SO ORDERED.**

Dated this 28th day of August, 2018.

*/s/ Charles S. Miller, Jr.*
Charles S. Miller, Jr., Magistrate Judge
United States District Court

---

[5] If the parties have not already done so, the court would strongly urge a settlement effort. If the parties want the use of a free mediator, Magistrate Judge Senechal would be willing to assist, including traveling to Bismarck. Also, the court would be willing to consider a continuance for this purpose if the parties are mutually agreeable.